Slip Op. 11 - 155

UNITED STATES COURT OF INTERNATIONAL TRADE

```
AMANDA FOODS (VIETNAM) LTD.,
et al.
                    Plaintiffs,

          v.

UNITED STATES,

                    Defendant,

                    and

AD HOC SHRIMP TRADE ACTION
COMMITTEE and THE DOMESTIC
PROCESSORS,

                    Defendant-
                    Intervenors.
```

Before: Donald C. Pogue,
Chief Judge

Consol. Court No. 09-00431

OPINION AND ORDER

[Remanding Department of Commerce's final results of
administrative review of antidumping duty order]

Dated: December 14, 2011

Matthew J. McConkey and Jeffrey C. Lowe, Mayer Brown LLP, of
Washington, DC, for Plaintiff Amanda Foods (Vietnam) Ltd.

John J. Kenkel and James K. Horgan, DeKieffer & Horgan, of
Washington, DC, for Consolidated Plaintiff Viet Hai Seafood Co.,
Ltd.

Matthew R. Nicely and David S. Christy, Thompson Hine LLP,
of Washington, DC, for Consolidated Plaintiffs Bac Lieu Fisheries
Joint Stock Co.; Ca Mau Seafood Joint Stock Co.; Cadovimex
Seafood Import-Export and Processing Joint-Stock Co.; Cafatex
Fishery Joint Stock Corp.; Coastal Fisheries Development Corp.;
Cuulong Seaproducts Co.; Danang Seaproducts Import Export Corp.;
Investment Commerce Fisheries Corp.; Minh Hai Export Frozen
Seafood Processing Joint-Stock Co.; Minh Hai Joint-Stock Seafoods
Processing Co.; Ngoc Sinh Private Enter.; Nha Trang Fisheries

Joint Stock Co.; Nha Trang Seaproduct Co.; Phu Cuong Seafood
Processing & Import-Export Co., Ltd.; Sao Ta Foods Joint Stock
Co.; Soc Trang Seafood Joint Stock Co.; Thuan Phuoc Seafoods and
Trading Corp.; UTXI Aquatic Products Processing Corp.; Viet Foods
Co., Ltd.; Vinh Loi Import Export Co.

   Robert G. Gosselink and Jonathan M. Freed, Trade Pacific,
PLLC, of Washington, DC, for Consolidated Plaintiff Cam Ranh
Seafoods Processing Enter. Co.

   Joshua E. Kurland, Trial Attorney, Commercial Litigation
Branch, Civil Division, United States Department of Justice, of
Washington, DC, for Defendant.  With him on the briefs were Tony
West, Assistant Attorney General, Jeanne E. Davidson, Director,
and Patricia M. McCarthy, Assistant Director.  Of counsel on the
brief was Jonathan M. Zielinski, Attorney, Office of the Chief
Counsel for Import Administration, U.S. Department of Commerce,
of Washington, D.C.

   Andrew W. Kentz, Jordan C. Kahn, and Nathaniel M. Rickard,
Pickard, Kentz & Rowe, LLP, of Washington, DC, for Defendant-
Intervenor Ad Hoc Shrimp Trade Action Committee

   Elizabeth J. Drake, Geert M. De Prest, and Wesley K. Caine,
Stewart and Stewart, of Washington, DC, and Edward T. Hayes,
Leake & Anderson, LLP, of New Orleans, LA, for Defendant-
Intervenor The Domestic Processors.

   **Pogue, Chief Judge:** In this action, the Plaintiffs seek

review of two determinations by the United States Department of

Commerce ("Commerce" or "the Department") in the final results of

the third administrative review of the antidumping duty order

covering certain frozen warmwater shrimp from the Socialist

Republic of Vietnam ("Vietnam").[1]

_____

   [1] Certain Frozen Warmwater Shrimp From the Socialist
Republic of Vietnam, 74 Fed. Reg. 47,191 (Dep't Commerce Sept.
15, 2009) (final results and final partial rescission of
antidumping duty administrative review) ("Final Results"), and
accompanying Issues & Decision Memorandum, A-552-802, ARP 07-08
(Sept. 8, 2009), Admin. R. Pub. Doc. 303 ("I & D Mem.") (adopted

First, Plaintiff Amanda Foods (Vietnam) Ltd. ("Amanda Foods"), challenges the Department's calculation of separate rates for cooperative, non-individually investigated respondents. This issue will be voluntarily remanded to Commerce for review in light of the Court's decision in <u>Amanda Foods (Vietnam) Ltd. v. United States</u>,   CIT   , 774 F. Supp. 2d 1286 (2011). Order, Aug. 9, 2011, ECF No. 56.[2]

Second, Plaintiff Viet Hai Seafood Co., Ltd. a/k/a Vietnam Fish One Co., Ltd. ("Fish One") challenges the Department's determination not to revoke the antidumping duty order with regard to Fish One under the Department's statutory authority provided by Section 751(d) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(d) (2006).[3]  This second issue is the focus of this opinion.

The court has jurisdiction pursuant to 19 U.S.C.

---

in <u>Final Results</u>, 74 Fed. Reg. at 47,191-92).

[2] Execution of this remand order was stayed pending resolution of the second issue raised in this case.

[3] In relevant part, the statute states:

[Commerce] may revoke, in whole or in part, . . . an antidumping duty order or finding . . . after review under subsection (a) or (b) of this section.

19 U.S.C. § 1675(d)(1).

All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

§ 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c).

As explained below, the court concludes that (I) Commerce's interpretation of the revocation statute is a reasonable interpretation of an ambiguous provision and consistent with Commerce's reasonable interpretation of its own regulations and policies regarding revocation for non-mandatory respondents; (II) because Fish One failed to exhaust its administrative remedies, it may not now challenge the mandatory respondent selection process; and (III) Fish One is not entitled to revocation based on three years of *de minimis* dumping margins.

**BACKGROUND**

Fish One is among the companies subject to Commerce's February 1, 2005, antidumping duty order covering certain frozen warmwater shrimp from Vietnam.[4]  Fish One requested a review of its sales covered by the order for the 2007–2008 period (the third administrative review) and also requested revocation of the antidumping duty order pursuant to 19 U.S.C. § 1675(d) and 19 C.F.R. § 351.222(b)(2) (2011).[5] Letter from DeKieffer & Horgan to Secretary, U.S. Department of Commerce 1 (Feb. 29, 2008), Admin.

---

[4] <u>Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam</u>, 70 Fed. Reg. 5,152, 5,154 (Dep't Commerce Feb. 1, 2005) (notice of amended final determination of sales at less than fair value and antidumping duty order)(the "order" or "ADD order").

[5] All subsequent citations to the Code of Federal Regulations are to the 2011 edition, unless otherwise noted.

R. Pub. Doc. 9.

As required by the statute, Commerce initiated the third administrative review,[6] and, in due course, issued its preliminary results of the review.[7]  In the Preliminary Results, Commerce determined, "not to revoke the Order with respect to Fish One." Preliminary Results, 74 Fed. Reg. at 10,011.

Commerce found Fish One ineligible for revocation because it was not chosen as a mandatory respondent.[8] Id.  According to

---

[6] Frozen Warmwater Shrimp from the Socialist Republic of Vietnam and the People's Republic of China, 73 Fed. Reg. 18,739 (Dep't Commerce Apr. 7, 2008) (notice of initiation of administrative reviews of antidumping duty orders)("Notice of Initiation").
   Commerce did not publish with the Notice of Initiation a "Request for Revocation of Order (in part)" in response to Fish One's request for revocation. Mem. of Pl. Supp. Mot. J. Agency R. 5, ECF No. 59-2 ("Pl.'s Br."); see 19 C.F.R. § 351.222(f)(2)(i) ("[Commerce] will publish with the notice of initiation under § 351.221(b)(1), notice of "Request for Revocation of Order (in part) . . . .").

[7] Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 74 Fed. Reg. 10,009 (Dep't Commerce Mar. 9, 2009) (preliminary results, preliminary partial rescission and request for revocation, in part, of the third administrative review) ("Preliminary Results").
   Commerce did not acknowledge Fish One's request for revocation until Commerce issued the Preliminary Results.  In the Preliminary Results, Commerce stated that it had "inadvertently omitted Fish One's request for revocation within the Initiation Notice." Id. at 10,011.

[8] In response to the Notice of Initiation, Commerce received 110 requests for review, of which twenty-eight companies requested a separate rate. Preliminary Results, 74 Fed. Reg. at 10,009-10.  Due to the large number of respondents, Commerce chose to limit the number of companies individually reviewed according to 19 U.S.C. § 1677f-1(c)(2)(B), choosing three

Commerce,

> [t]he Department does not interpret the regulation as
> requiring it to conduct an individual examination of
> Fish One, or a verification of Fish One's data, where,
> as here, the Department determined to limit its
> examination to a reasonable number of exporters in
> accordance with [19 U.S.C. § 1677f-1(c)(2)(B)[9]], and
> Fish One was not one of those companies selected under
> this provision.

Id.  Commerce neither altered its determination or its basic

---

companies — Camimex, Min Phu Group, and Phuong Nam Co., Ltd. — as
mandatory respondents. Id. at 10,010.  Neither Fish One, nor any
other respondent, challenged Commerce's determination that the
number of respondents was large, necessitating the invocation of
§ 1677f-1(c)(2).

[9] 19 U.S.C. § 1677f-1(c) provides:

(1) General rule
    In determining weighted average dumping margins
under . . . 1675(a) of this title, [Commerce] shall
determine the individual weighted average dumping
margin for each known exporter and producer of the
subject merchandise.
(2) Exception
    If it is not practicable to make individual
weighted average dumping margin determinations under
paragraph (1) because of the large number of exporters
or producers involved in the investigation or review,
[Commerce] may determine the weighted average dumping
margins for a reasonable number of exporters or
producers by limiting its examination to--
    (A) a sample of exporters, producers, or types of
products that is statistically valid based on the
information available to [Commerce] at the time of
selection, or
    (B) exporters and producers accounting for the
largest volume of the subject merchandise from the
exporting country that can be reasonably examined.

rationale in the <u>Final Results</u>.[10] See <u>Final Results</u>, 74 Fed. Reg.

at 47,193; <u>I & D Mem.</u> Cmt. 16 at 57-63.

## STANDARD OF REVIEW

When reviewing the Department's decisions made in

administrative reviews of antidumping duty orders, the court

"shall hold unlawful any determination, finding, or conclusion

found . . . to be unsupported by substantial evidence on the

record, or otherwise not in accordance with law." 19 U.S.C.

§ 1516a(b)(1)(B)(i).

## DISCUSSION

Fish One makes three principle arguments before the court.

Fish One first contends that the Department's determination not

to individually review its sales for the purpose of revocation is

not in accordance with law because it is (A) contrary to

Congressional intent, (B) an unreasonable interpretation of the

statute, (C) counter to the Department's regulations, and (D)

inconsistent with the Department's precedent and policy.  Second,

Fish One contends that Commerce employed a flawed process for

selecting mandatory respondents.  Third, Fish One contends that

the zero percent dumping margin assigned to it in the <u>Final</u>

<u>Results</u> entitles it to revocation.  Each of these arguments are

---

[10] Fish One did qualify for separate rate status and received a zero margin. <u>Final Results</u>, 74 Fed. Reg. 47,195-96. Thus, Fish One was a non-selected, separate rate respondent in this review.

considered separately.

I.   The Department's determination not to individually review
     Fish One for the purpose of revocation is based on a
     reasonable interpretation of the statute, regulations, and
     agency policies

The heart of the parties' dispute is their disagreement over the existence and nature of a "revocation review" under 19 U.S.C. § 1675(d).  Specifically, Fish One asks the court to conclude that § 1675(d) requires Commerce to conduct an individual review upon receipt of a request for revocation.

Commerce contends that § 1675(d) permits the revocation of an anti-dumping duty order after a § 1675(a) review, also referred to as an administrative review, but does not create a separate revocation review process.[11]  Def's Resp. to Pl.'s Mot. J. Admin. R. 8-10, ECF No. 67 ("Def.'s Resp. Br.").  Fish One argues, in contrast, that § 1675(d) mandates a separate and parallel revocation review that is to be conducted simultaneously with a § 1675(a) administrative review. Pl.'s Br. 11-14.

Resolving these differing interpretations requires consideration of the interplay of three statutory provisions (19 U.S.C. §§ 1675(a), 1675(d), and 1677f-1(c)(2)), all relating to administrative review of antidumping duty orders.

---

[11] Revocation is also available following a § 1675(b) review for changed circumstances; however, the facts of this case concern a § 1675(a) review, therefore the discussion will be limited to revocation following a § 1675(a) review.

According to Commerce's view, the § 1677f-1(c)(2) provision for limiting the number of respondents in an administrative review also limits the number of respondents eligible for revocation.  To Commerce, because an administrative review is a prerequisite for revocation, if a respondent is excluded from review under § 1677f-1(c)(2), they are also excluded from revocation.  Thus, in its <u>Final Results</u>, Commerce reasoned that "pursuant to [19 U.S.C. § 1677f-1(c)(2)(B)], . . . it could reasonably examine the three largest exporters by volume" and because "Fish One was not included among the top three, the Department was under no obligation to select Fish One for individual examination." <u>I & D Mem.</u> Cmt. 16 at 61.

Fish One contests Commerce's interpretation, arguing that because the text of § 1677f-1(c)(2) does not make mention of § 1675(d), the former cannot be applied as an exception to the latter.  To Fish One, § 1677f-1(c)(2) applies only to administrative reviews under § 1675(a), and because revocation reviews under § 1675(d) are separate and parallel, they are outside the purview of § 1677f-1(c)(2).  Therefore, in Fish One's opinion, "[n]owhere in the statute is there any limitation on the review of revocation requests." Pl.'s Br. 12.  Accordingly, Fish One claims that "Congress has spoken and Commerce has no leeway. . . .  Commerce must strictly follow the revocation provision of the statute." <u>Id.</u>  Fish One further contends that Commerce has

acknowledged the parallel review process by making revocation

reviews mandatory under its regulations. Id. at 14-16.

Because Fish One challenges Commerce's interpretation of the

statute, this question is reviewed using the familiar two step

framework required by the Supreme Court's decision in Chevron,

U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837,

842-45 (1984).[12]

---

[12] Under Chevron, first the court must determine if
"Congress has directly spoken to the precise question at issue."
Chevron, 467 U.S. at 842 ("If the intent of Congress is clear,
that is the end of the matter . . . ."). When determining
whether Congress has spoken to the precise question at issue, the
court makes recourse to the traditional tools of statutory
construction. Id. at 843 n.9. The primary tool for discerning
Congressional intent is the plain meaning of the statute's text,
but if the plain meaning does not resolve the issue, then the
court will turn to the statute's structure, canons of statutory
construction, and may also consider legislative history. Timex
V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998).
    If, after employing the tools of statutory construction
under step one, the court determines that "the statute is silent
or ambiguous with respect to the specific issue," then the court
must determine whether the agency's interpretation of the statute
is reasonable. Chevron, 467 U.S. at 843; see also Windmill Int'l
Pte. v. United States, 26 CIT 221, 223, 193 F. Supp. 2d 1303,
1306 (2002). An agency's interpretation will be upheld, so long
as it is a reasonable interpretation. "[Commerce's] construction
need not be the only reasonable interpretation or even the most
reasonable interpretation. . . . Rather, a court must defer to an
agency's reasonable interpretation of a statute even if the court
might have preferred another." Timken Co. v. United States, 354
F.3d 1334, 1342 (Fed. Cir. 2004) (quoting Koyo Seiko Co. v.
United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (ellipses in
original)). When evaluating the reasonableness of Commerce's
interpretation, the Court considers, *inter alia*, "the express
terms of the provisions at issue, the objectives of those
provisions and the objectives of the antidumping scheme as a
whole." Windmill Int'l Pte., 26 CIT at 223, 193 F. Supp. 2d
at 1306.

    *A.   The statute is ambiguous regarding individual review*
        *following a request for revocation*

The plain meaning of 19 U.S.C. § 1675(d) is little help in resolving the question at issue.  As noted above, the provision states in relevant part:

> [Commerce] may revoke, in whole or in part, . . . an antidumping duty order or finding . . . after review under subsection (a) or (b) of this section.

19 U.S.C. § 1675(d).  This language provides no indication of whether a revocation request mandates an individual review. Rather, the "language provides minimal guidance other than providing that the revocation should be carried out 'after review under subsection (a) [a periodic administrative review] or (b) [a changed circumstances review] . . . .'" <u>Sahaviriya Steel Indus. v. United States</u>, 649 F.3d 1371, 1376 (Fed. Cir. 2011) (quoting 19 U.S.C. § 1675(d)(1)).

The statute is clear that a respondent subject to an antidumping duty order must undergo a § 1675(a) administrative review or a § 1675(b) changed circumstances review before the order is revoked under § 1675(d).  But whether and how that review is to be conducted is not addressed by § 1675(d). <u>See Sahaviriya Steel</u>, 649 F.3d at 1376 ("The language of the statute is silent as to the conditions that might warrant the revocation of an antidumping duty order or the particular circumstances that would trigger such action.").  The statute's ambiguity on this

point means that "Commerce was left by Congress to promulgate guidelines as to when revocations 'in whole or in part' are appropriate and to set forth proper procedures therefore." Id. (citing Chevron, 467 U.S. at 843).

Fish One argues that all statutory language must be given effect, which requires the separate provisions at §§ 1675(a) and (d) to be interpreted as independent review processes; therefore, "[s]ince it is 'possible' to implement both provisions of the statute, Commerce should have done so," Pl.'s Br. 12-13; see Meeks v. West, 216 F.3d 1363, 1366-67 (Fed. Cir. 2000).

It is not true, however, that giving each provision of the statute such full, *independent* effect is the only way to "fit . . . all parts [of the statute] into an harmonious whole." FTC v. Mandel Bros., 359 U.S. 385, 389 (1959). Rather, "words of a statute must be read in their context and with a view to their place in the overall statutory scheme." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (quoting Davis v. Mich. Dept. of Treasury, 489 U.S. 803, 809 (1989)). Whether Commerce's interpretation of the overall statutory scheme governing review is reasonable will be taken up below; for now it is sufficient to state that Plaintiff's argument that §§ 1675(a), 1675(d), and 1677f-1(c)(2) *cannot* be read together, but must be given independent effect, is inconsistent with established practices of statutory construction that seek to interpret the statutory

scheme as a harmonious whole.  Furthermore, though the statute is clear that revocation cannot occur absent review, the statute is ambiguous regarding the trigger and form of that review.

　　　*B.   The Department's interpretation is reasonable*

　　　As noted above, Commerce has interpreted the exception to individual review of an antidumping duty order found at § 1677f-1(c)(2) to be applicable to revocation under § 1675(d). In short, Commerce argues that because Fish One was not chosen for mandatory review under § 1677f-1(c)(2)(B), it had no subsequent right to an individual review for the purposes of revocation. See Preliminary Results, 74 Fed. Reg. at 10,011-12. Fish One argues in response that "the statute does not limit revocation review in any manner.  Without such limitation, Commerce must conduct a revocation review if requested.  A mere request by a respondent triggers the pertinent section of the Statute." Pl.'s Br. 14.

　　　Fish One's argument finds no support in the language of the statute.  Nowhere in the text of § 1675(d) is there mention of a "request for revocation" nor does § 1675(d) contain any language that compels the Department to do anything.  As this Court has previously held, the statutory language of § 1675(d) places the discretionary authority to revoke with Commerce. See Hyundai Elec. Co. v. United States, 23 CIT 302, 308, 52 F. Supp. 2d 1334, 1340 (1999) (holding that "may revoke" language in statute

conferred discretion on Commerce).[13]  To conclude that Commerce

is required to initiate a review based on a statutory provision

that does no more than give Commerce the discretion to revoke an

order is contrary to the plain language of the statute.

    Nor does the Plaintiff's argument for the unreasonableness

of the Department's interpretation find a basis in the objectives

of these provisions or the antidumping scheme as a whole.  See

Windmill Int'l Pte., 26 CIT at 223, 193 F. Supp. 2d at 1306.  In

this regard, the history of the relevant provisions is helpful.

    Administrative review of antidumping duty orders was first

provided for in the Trade Agreement Act of 1979, Pub. L. No.

96-39, § 751(a), 93 Stat. 144, 175 (1979) (codified at 19 U.S.C.

§ 1675(a)).  In its first incarnation, § 1675(a) made annual,

administrative reviews mandatory.[14]  What is now § 1675(d) was

---

    [13] Hyundai also held that the "may revoke" language in the
regulation conferred discretion on Commerce. See Hyundai, 23 CIT
at 308, 53 F. Supp. 2d at 1340; 19 C.F.R. § 353.25(a)(2) (1997)
("[Commerce] may revoke an order in part if . . . .").  In 1999,
Commerce changed the language of the regulation so that it read
"If [Commerce] determines . . . that the antidumping duty
order . . . is no longer warranted, [Commerce] will revoke the
order . . . ."). 19 C.F.R. § 351.222(b)(1)(ii) (2000); see also
Amended Regulation Concerning the Revocation of Antidumping and
Countervailing Duty Orders, 64 Fed. Reg. 51,236, 51,239 (Dep't
Commerce Sept. 22, 1999).  Whether Commerce's regulations impose
upon it any obligation to revoke an order is discussed below.

    [14] "At least once during each 12-month period . . .
[Commerce], after publication of notice of such review in the
Federal Register, shall review, and determine . . . the amount of
any antidumping duty." 19 U.S.C. § 1675(a)(1)(B) (1982); §
751(a)(1)(B), 93 Stat. at 175.

also introduced in the Trade Agreement Act of 1979 using the same language that remains in force today.[15] § 751(c), 93 Stat. at 176.  In the Trade and Tariff Act of 1984, Pub. L. No. 98-573, § 611(a)(2), 98 Stat. 2948, 3031 (1984), Congress amended § 1675(a) by adding the language, "if a request for such a review has been received."  The effect of this amendment was to cease mandatory annual review and place the burden for requesting review on the interested parties.  Also in the Trade and Tariff Act of 1984, Congress added § 1677f-1, which permitted Commerce to use sampling and averaging when conducting § 1675 reviews. § 620(a), 98 Stat. at 3039.  Finally, in the Uruguay Round Agreements Act, Congress amended § 1677f-1 by adding subsection (c) as it now reads, including the requirement for individual review when determining dumping margins and the exceptions to individual review. § 229(a), 108 Stat. at 4889.  Throughout the various modifications noted here, the relevant language of § 1675(d) has remained consistent. Compare § 751(c), 93 Stat. at 176, with 19 U.S.C. § 1675(d) (2006).

This history points to two important considerations.  First, in the original incarnation of § 1675, the revocation provision

---

[15] What is now 19 U.S.C. § 1675(d) was originally designated as 19 U.S.C. § 1675(c), § 751(c), 93 Stat. at 176; 19 U.S.C. § 1675(c) (1982), and later re-designated § 1675(d) when a new provision was added regarding five year review, Uruguay Round Agreements Act, Pub. L. No. 103-465, § 220(a), 108 Stat. 4809, 4861-64 (1994).

in § 1675(d) existed in the context of a mandatory, annual review as required by § 1675(a).  Thus, each year an annual review would be conducted, *after* which Commerce could make § 1675(d) revocation decisions.  Though the statutory scheme has changed over time, § 1675(d) has remained consistent, and "provisions introduced by an amendatory act should be read together with provisions of the original section that were reenacted or left unchanged as if they had been originally enacted as one section." 1A Norman J. Singer & J.D. Shambie Singer, <u>Statutes and Statutory Construction</u> § 22.34, at 395-96 (7th ed. 2009).

Second, in amending the statutory scheme, Congress has sought to achieve a balance of fairness and efficiency.  On the one hand, § 1675(d)(1) provided an opportunity for revocation indispensable to the fair administration of the antidumping duty regime.  However, Congress has also evidenced a concern with the efficient administration of the regime and, in particular, with moderating the administrative burden placed on Commerce. <u>See IPSCO, Inc. v. United States</u>, 12 CIT 676, 678, 692 F. Supp. 1368, 1370-71 (1988) (reviewing the legislative history of amendments to 19 U.S.C. § 1675 and noting Congress's emphasis on lessening the burden on Commerce as well as petitioners and respondents).  Both the removal of the mandatory annual review under § 1675(a) and the introduction of § 1677f-1(c)(2) indicate a Congressional intent to strike a balance between fairness and efficiency in the

administration of the antidumping duty regime, particularly in
the process of review.

Both the statutory structure and Congress's intent to
balance fairness and efficiency suggest that the Department's
interpretation is reasonable.  Commerce's decision to subordinate
revocation decisions under § 1675(d) to the review process,
including § 1677f-1(c)(2), tracks the structure of the statute
and maintains the balance between fairness and efficiency.
Moreover, as will be discussed below, Commerce's interpretation
does not eliminate Fish One's opportunity for selection as a
voluntary respondent and therefore does not foreclose Fish One's
opportunity for review and revocation.  In addition, Defendant-
Intervenor's point out that recognition of Commerce's resource
constraints is not a factor that limits only the opportunity for
respondents to obtain review.  Rather, it also limits the
opportunity for domestic producers to obtain review of additional
respondents.  Accordingly, because the statutory language is
ambiguous and the Department's interpretation is reasonable, the
court defers to Commerce's interpretation of the statute.  See
Chevron, 467 U.S. at 842–45.

    C.   *Commerce's interpretation of its regulations is*
        *reasonable and consistent with its interpretation of*
        *the statute*

Fish One next argues that Commerce has failed to abide by
its own regulations, once again resting this argument on the
notion that an administrative review and a revocation review are
separate and independent procedures. Pl.'s Br. 14-16.  Fish One
claims that the Department's regulations require the initiation
of a revocation review upon request by a party and that Commerce
violated its regulations on revocation when it did not conduct a
revocation review upon Fish One's request. Id.  Under this
theory, Fish One points to language in 19 C.F.R. § 351.222(f)(2),
which it argues compels Commerce to take specific, enumerated
actions with regard to a request for revocation.[16]  Plaintiff
makes much of the fact that the "regulatory language is
mandatory, stating that Commerce will perform certain functions
as part of the revocation review," Id. at 3., and in particular
that "[19 C.F.R.] § 351.222 states that Commerce 'will' initiate

---

[16] The relevant actions include: (1) publishing notice of a
"Request for Revocation of Order (in part)"; (2) conducting a
verification of the requesting party; (3) including a preliminary
decision on revocation in the preliminary results of review; (4)
publishing an "Intent to Revoke Order (in part)" with the
preliminary results if warranted; (5) including a final decision
on revocation with the publication of the final results of
review; and (6) publishing a "Revocation of Order (in part)" with
the notice of final results if warranted. 19 C.F.R.
§ 351.222(f)(2).

a partial revocation review, if requested," Id. at 15–16.[17]

Commerce argues in response that Fish One's distinction between administrative and revocation reviews is, again, illusory. Def.'s Resp. Br. 10–11.  According to Commerce, "[a] review under the regulation means an administrative review under 19 U.S.C. § 1675(a)," id. at 10; therefore, the regulatory provisions under 19 C.F.R. § 351.222 are only applicable *when* a respondent is selected for review under 19 U.S.C. § 1677f-1(c)(2).  As Commerce stated in the Preliminary Results, "[n]othing in the regulation requires the Department to conduct an individual examination and verification when the Department has limited its review, under [19 U.S.C. § 1677f-1(c)(2)]." Preliminary Results, 74 Fed. Reg. at 10,012; see also I & D Mem. Cmt. 16 at 61.[18]

---

[17] See 19 C.F.R. § 351.222(f)(1) ("Upon receipt of a timely request for revocation or termination under paragraph (e) of this section, [Commerce] will consider the request as including a request for an administrative review and will initiate and conduct a review under § 351.213.").

[18] In making its case before Commerce Fish One also relied on 19 C.F.R. § 351.222(b)(2), which provides that

> [i]n determining whether to revoke an antidumping duty order, in part, . . . [Commerce] will consider: (A) Whether one or more exporters or producers covered by the order have sold the merchandise at not less than normal value for a period of at least three consecutive years; (B) Whether, for any exporter or producer that the Secretary previously has determined to have sold the subject merchandise at less than normal value, the exporter or producer agrees in writing to its immediate

An agency is, of course, bound by its regulations. <u>See</u>
<u>United States v. Nixon</u>, 418 U.S. 683, 696 (1974) ("So long as
this regulation remains in force the Executive Branch is bound by
it . . . ."); <u>Vitarelli v. Seaton</u>, 359 U.S. 535, 539-40 (1959);
<u>Service v. Dulles</u>, 354 U.S. 363, 388 (1957).  However, the court
defers to the agency's error-free interpretation of its own
regulations. <u>Carpenter Tech. Corp. v. United States</u>, 31 CIT 181,
184, 474 F. Supp. 2d 1347, 1350 (2007) (citing <u>Torrington Co. v.</u>
<u>United States</u>, 156 F.3d 1361, 1363-64 (Fed. Cir. 1998)).  "[The
court's] task is not to decide which among several competing
interpretations best serves the regulatory purpose.  Rather, the
agency's interpretation must be given 'controlling weight unless
it is plainly erroneous or inconsistent with the regulation.'"
<u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512 (1994)
(quoting <u>Bowles v. Seminole Rock & Sand Co.</u>, 325 U.S. 410, 414

---

reinstatement in the order, as long as any exporter or
producer is subject to the order, if the Secretary
concludes that the exporter or producer, subsequent to
the revocation, sold the subject merchandise at less
than normal value; and (C) Whether the continued
application of the antidumping duty order is otherwise
necessary to offset dumping.

19 C.F.R. § 351.222(b)(2)(i).  To Fish One this language must be
read to require a revocation review.  Commerce, however,
reasonably construes this "will consider" language to apply after
the administrative review has been completed, noting that because
Fish One was not a mandatory respondent, the record did not
support the conclusion that the conditions of § 351.222(b)(2)(i)
were met.

(1945)).  Furthermore, the court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." <u>Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.</u>, 419 U.S. 281, 286 (1974).

Because Commerce's interpretation is neither plainly erroneous nor inconsistent with the regulation, the court defers to that interpretation. <u>See Thomas Jefferson Univ.</u>, 512 U.S. at 512.  According to 19 C.F.R. § 351.222(f)(2) certain actions must be taken by Commerce; however, it is a reasonable interpretation to conclude that these provisions do not require an individual review so much as they define the procedures of a review when it has been initiated.[19]  While § 351.222(f)(1) states that "[Commerce] will initiate and conduct a review," it has already been established above, <u>see supra</u> Section I.B, that a review under 19 U.S.C. § 1675(a) is not synonymous with a revocation. The Department's understanding that its regulations under 19

---

[19] The Court recognizes that § 351.222(f)(2)(i) does establish a mandatory action by Commerce — publishing the "Request for Revocation of Order (in part)" along with the notice of initiation — whenever a request for revocation is filed. 19 C.F.R. § 351.222(f)(2)(i).  Commerce acknowledged this obligation when it noted in the <u>Preliminary Results</u> that it had inadvertently failed to take this action.  <u>Preliminary Results</u>, 74 Fed. Reg. at 10,011. However, because Commerce acknowledged the revocation request and the revocation was denied on other grounds, this mistake amounts to harmless error. <u>See Intercargo Ins. Co. v. United States</u>, 83 F.3d 391, 396 (Fed. Cir. 1996) (holding the Customs Service's failure to include requisite language in an extension notice harmless error where plaintiff suffered no prejudice).

C.F.R. § 351.222(f) initiate an administrative review under 19

U.S.C. § 1675(a), and therefore are subject to the exception to

individual review found at 19 U.S.C. § 1677f-1(c)(2), is entirely

consistent with its statutory interpretation, held reasonable

above.  Thus, it is reasonable for the Department to conclude

that 19 C.F.R. § 351.222 only requires Commerce to initiate an

administrative review under 19 U.S.C. § 1675(a) and requires

further action only when a respondent is chosen for individual

review consistent with 19 U.S.C. § 1677f-1(c)(2).

> D.    *Commerce's decision not to individually review Fish One*
>       *is consistent with its prior policy*

Fish One next contends that Commerce should have applied a

policy that Fish One claims was created in Certain Fresh Cut

Flowers from Colombia ("Flowers").[20]  Fish One argues that

Flowers is an established precedent to which Commerce must hew.

Pl.'s Br. 17.  Commerce responds that it does not consider

Flowers to be binding precedent because the "procedure was never

implemented in practice and was limited to the Flowers

proceeding." I & D Mem. Cmt. 16 at 62.  Commerce further argues

that even if Flowers is considered agency precedent, it has

offered a reasonable explanation for its departure from this

---

[20] Certain Fresh Cut Flowers from Colombia, 62 Fed. Reg.
53,287, 53,290–91 (Dep't Commerce Oct. 14, 1997) (final results
and partial rescission of antidumping duty administrative review)
("Flowers Final Results").

policy. Def.'s Resp. Br. 12-13.

An agency is not prohibited from changing its policies or adopting a position contrary to prior practice. See <u>Smiley v. Citibank (South Dakota), N.A.</u>, 517 U.S. 735, 742 (1996) ("[T]he mere fact that an agency interpretation contradicts a prior agency position is not fatal.").  When an agency changes its position suddenly and without explanation or "does not take account of legitimate reliance on prior interpretation," the agency's action may be "arbitrary, capricious [or] an abuse of discretion." <u>Id.</u> (internal citations omitted).  "[I]f these pitfalls are avoided, change is not invalidating . . . ."[21] <u>Id.</u> Furthermore, the binding power of an agency policy is increased by the agency's own adherence, over time to such policy.  As the Supreme Court has noted,

> [t]hough the agency's discretion is unfettered at the outset, if it announces and follows — by rule or

---

[21] Furthermore, the court does not substitute its judgment for that of the agency.  Rather, it requires of the agency only that it support its decision with some sound reasoning.

> [T]he agency must show that there are good reasons for the new policy.  But it need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates.

<u>FCC v. Fox Television Stations, Inc.</u>, 556 U.S. 502,     , 129 S. Ct. 1800, 1811 (2009).

settled course of adjudication — a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as "arbitrary, capricious, [or] an abuse of discretion."

INS v. Yang, 519 U.S. 26, 32 (1996)(internal citations omitted).

The policy at issue here was developed in the ninth administrative review of certain fresh cut flowers from Colombia. In that review, Commerce, for the first time, reviewed only the largest subject exporters pursuant to 19 U.S.C. § 1677f-1(c)(2). Certain Fresh Cut Flowers from Colombia, 62 Fed. Reg. 16,772, 16,773 (Dep't Commerce Apr. 8, 1997) (preliminary results and partial rescission of antidumping duty administrative review) ("Flowers Prelim. Results"). In light of Commerce's decision to limit the number of respondents, several non-selected respondents requested an alternative process by which they could preserve their revocation eligibility. Id. at 16,774. In response, the Department, put forth three proposals "to allow for the possibility of future partial revocations in this order, while taking into account the Department's limited resources and the requirement that a company be verified in order to be revoked." Id. After taking comments, Commerce adopted a policy whereby a non-selected respondent that met certain criteria[22] would be

---

[22] The necessary criteria were:

(1) a review was requested for the company in each of

individually reviewed under 19 U.S.C. § 1675(a) and also have
data for the two prior years reviewed for the purposes of
revocation. Flowers Final Results, 62 Fed. Reg at 53,291.  A non-
selected respondent that met the criteria, requested revocation,
and was determined by Commerce not to have sold merchandise at
less than normal value in each of the three years examined, would
receive a revocation of the antidumping duty order. Id.

        Nonetheless, the court cannot construe the Flowers policy to
be a continuing limitation upon Commerce's discretion, Yang, 519
U.S. at 32, which would constrain the agency's future decision
making.  Rather, the agency's case-by-case decision-making places
insufficient reliance upon Flowers to give it the sort of
precedential weight that would bind Commerce.  All that stands in
favor of such a finding is the announcement of the procedure

-----

          the two years immediately preceding the period of
          review in which revocation is requested, but the
          company was not selected for examination in either of
          those two preceding reviews; and (2) with the request
          for revocation the company (a) certifies that it sold
          subject merchandise at not less than normal value
          during the period described in 19 C.F.R.
          § 351.213(e)(1) and for two consecutive years
          immediately preceding that period; (b) provides the
          certifications required under 19 C.F.R.
          § 351.222(e)(ii) and (iii); and (c) submits a statement
          acknowledging that its entries are subject to
          assessment of AD duties at the non-selected respondent
          rate in one or both of the two preceding review
          periods.

Flowers Final Results, 62 Fed. Reg at 53,291.

through publication in the Federal Register.  However, even in

the case for which it was created, the procedure was never

implemented[23]; nor has Commerce subsequently implemented the

procedure in any case outside of Flowers.  Not only has Commerce

not consistently relied upon Flowers, see Yang, 519 U.S. at 32,

it has never relied upon Flowers, cf. Smiley, 517 U.S. at 742-43.

    Commerce has also bypassed the opportunity to implement the

procedure outlined in Flowers.  In Certain Lined Paper from the

People's Republic of China ("Lined Paper"),[24] Commerce selected

only one mandatory respondent, Shanghai Lian Li Paper Products

Co., Ltd. ("Lian Li").  Lined Paper I & D Mem. Cmt. 7 at 43.  Non-

---

[23] Because all requests for review had been withdrawn during
the eighth review of the Flowers order, no respondent could be
eligible for revocation until the eleventh review, at which point
it would be possible to show three consecutive years of not less
than normal value sales.  Flowers Prelim. Results, 62 Fed. Reg. at
16,774.  Thus, the procedure laid out in Flowers Final Results,
would first be available "in the review of the period March 1,
1997 to February 28, 1998 (the eleventh review period)."  Flowers
Final Results, 62 Fed. Reg. at 53,291.  However, the eleventh and
subsequent reviews were terminated when the Department revoked
the order in whole on July 20, 1999.  Certain Fresh Cut Flowers
from Colombia, 64 Fed. Reg. 38,887, 38,888 (Dep't Commerce July
20, 1999) (final results of changed circumstances antidumping
duty administrative review; revocation of order) ("As the result
of the revocation, the Department is terminating the
administrative review[] covering the following period[]: March 1,
1997, through February 28, 1998 . . . .").

[24] Certain Lined Paper Products from the People's Republic
of China, 74 Fed. Reg. 17,160 (Dep't Commerce Apr. 14, 2009)
(notice of final results of the antidumping duty administrative
review) ("Lined Paper Final Results"), and accompanying Issues
and Decision Memorandum, A-570-901, ARP 06-07 (Apr. 6, 2009)
("Lined Paper I & D Mem.").

selected respondents Watanabe Paper Products (Shanghai) Co.,
Ltd.; Watanabe Paper Products (Linging) Co., Ltd.; and Hotrock
Stationary (Sennzhen) Co., Ltd. (collectively "Watanabe")
challenged the selection, arguing, *inter alia*, that by choosing
only one respondent Commerce was denying Watanabe the opportunity
to seek revocation in the future. Id.  Though the facts of Lined
Paper are very similar to Flowers, Commerce chose not to invoke
the Flowers procedure in Lined Paper.  Instead, Commerce found
that with, regard to revocation, "the Department has the
discretion, pursuant to [19 U.S.C. § 1677f-1(c)(2)], to limit the
number of entities that it reviews if it is not practicable to
examine each individual exporter or producer." Id. at 47.

Rather, in Lined Paper, Commerce "extended the opportunity
for non-mandatory respondents to seek voluntary status . . . ."
Id. at 43.  Voluntary respondent status will be discussed further
below, but for now the court notes that such an opportunity
exists for a non-selected respondent to seek individual review.
See 19 U.S.C. § 1677m(a).  Though Commerce developed an
alternative policy in Flowers for maintaining the revocation
eligibility of non-selected respondents, the court finds it
reasonable for Commerce to now require non-selected respondents
to instead go through the voluntary respondent process.

Accordingly, because Commerce has failed to implement or
rely upon Flowers and has, in practice, changed its policy to

rely instead on the voluntary review process in order to achieve the objectives stated in Flowers, the court finds that the procedure announced in Flowers is not binding upon Commerce in this or subsequent reviews.

II.  Fish One cannot challenge the mandatory selection process because it failed to exhaust its administrative remedies

Fish One next argues that the Department used an improper methodology for choosing its mandatory respondents when it took into consideration its workload in other antidumping duty proceedings. Pl.'s Br. 18-19.  Fish One further argues that it was unreasonable for the Department to limit its review to three mandatory respondents, when it could have included Fish One as a fourth. Id.  Fish One relies on this Court's recent opinion in Zhejiang Native Produce & Animal By-Products Import & Export Corp. v. United States,    CIT    , 637 F. Supp. 2d 1260 (2009) to support both of these contentions. Pl.'s Br. 18-19.

The court will not reach the merits of these claims because Fish One failed to exhaust its administrative remedies on this issue.  Having failed to object to the mandatory respondent selection process at the administrative level, Fish One cannot raise the issue here.  Furthermore, Fish One could have sought individual review through the voluntary respondent process, and, failing to do so, it is not in a position to challenge the mandatory respondent selection.

It is a general rule of administrative law that a plaintiff must exhaust available administrative remedies before seeking relief in the courts. United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); McKart v. United States, 395 U.S. 185, 193 (1969) ("[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 (1938)). Similarly, this Court is required by statute to, "where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d); see also Consol. Bearings Co. v. United States, 348 F.3d 997, 1003 (Fed. Cir. 2003) ("In the Court of International Trade, a plaintiff must also show that it exhausted its administrative remedies . . . .").

Fish One never raised its current objections to the mandatory selection process with Commerce.  Following the selection of mandatory respondents, Fish One sent two letters to Commerce requesting that Commerce abide by Fish One's interpretation of the statutes and regulations by conducting an

individual review of Fish One for the purpose of revocation. <u>See</u>
Letter from DeKieffer & Horgan to Secretary, U.S. Department of
Commerce (Oct. 8, 2008), Admin. R. Pub. Doc. 123 ("First Review
Request Letter from Fish One to Commerce"); Letter from DeKieffer
& Horgan to Secretary, U.S. Department of Commerce (Jan. 2,
2009), Admin. R. Pub. Doc. 184 ("Second Review Request Letter
from Fish One to Commerce").  However, in neither of these
letters did Fish One raise its concern with how the mandatory
selection process was conducted.[25]  Nor did Fish One raise these
concerns in its case brief to the agency. <u>See</u> Case Br., Apr. 13,
2009, Admin. R. Pub. Doc. 270.  Because Fish One did not raise
these concerns during the administrative process, Commerce had no
opportunity to consider them in making its determinations.  The
court will not decide a question the agency had no opportunity to
consider. <u>See</u> <u>Unemployment Compensation Comm'n of Alaska v.</u>
<u>Aragon</u>, 329 U.S. 143, 155 (1946) ("A reviewing court usurps the
agency's function when it sets aside the administrative
determination upon a ground not theretofore presented and

---

[25] In the first letter, Fish One did argue that respondents
were being treated "unevenly in their quest for revocation" and
requested that it be made a mandatory respondent, but its
argument was premised on what it perceived to be different
treatment of respondents requesting revocation; it did not raise
the arguments it now makes about the number of mandatory
respondents selected and the factors Commerce took into
consideration. First Review Request Letter from Fish One to
Commerce 6-7.

deprives the [agency] of an opportunity to consider the matter,
make its ruling, and state the reasons for its action.").

This result is especially appropriate here because Fish One
also failed to exhaust its available remedies by not seeking a
voluntary individual review.  Where, as here, the number of
respondents in an administrative review has been limited under 19
U.S.C. § 1677f-1(c)(2), Congress has provided an alternative
process for a respondent to seek an individual review.  This
process is provided for at 19 U.S.C. § 1677m(a), which reads in
relevant part:

> In . . . a review under section 1675(a) of this title
> in which [Commerce] has under section 1677f-1(c)(2) of
> this title . . . limited the number of exporters or
> producers examined . . . [Commerce] shall
> establish . . . an individual weighted average dumping
> margin for any exporter or producer not initially
> selected for individual examination under such sections
> who submits to [Commerce] the information requested
> from exporters or producers selected for examination
> . . . ."

19 U.S.C. § 1677m(a).[26]

Commerce has provided further guidance for requesting
voluntary respondent status in its regulations under 19 C.F.R.
§ 351.204.  The relevant sections read:

---

[26] The statute does permit Commerce to decline to review
voluntary respondents when the number of voluntary respondents is
so large as to "be unduly burdensome and inhibit the timely
completion of the investigation." 19 U.S.C. § 1677m(a)(2).
However, because Fish One never applied for voluntary respondent
status in the third administrative review, the exception is not
relevant in this case.

> If [Commerce] limits the number of exporters or
> producers to be individually examined under [19 U.S.C.
> § 1677f-1(c)(2)(B)] . . . . [Commerce] will examine
> voluntary respondents (exporters or producers, other
> than those initially selected for individual
> examination) in accordance with [19 U.S.C.
> § 1677m(a)]. . . . . An interested party seeking
> treatment as a voluntary respondent must so indicate by
> including as a title on the first page of the first
> submission, "Request for Voluntary Respondent
> Treatment."

19 C.F.R. § 351.204(d)(1) & (4).[27]

At no point during the administrative review underlying this case did Fish One make a request to Commerce for individual review as a voluntary respondent.  Rather, in its first submission to Commerce following the selection of mandatory respondents, Fish One requested an individual review under its interpretation of the statutes and regulations relating to revocation.[28]  See First Review Request Letter from Fish One to Commerce.

Lack of follow-through in the voluntary respondent process constitutes a failure to exhaust administrative remedies.  See Schaeffler Italia S.R.L. v. United States,    CIT   , 781

---

[27] In order to be eligible for voluntary respondent status, the exporter or producer must also submit the relevant information on the same schedule as the mandatory respondents. 19 U.S.C. § 1677m(a)(1)(A).

[28] Nor did Fish One seek voluntary respondent status in subsequent submissions.  Furthermore, Fish One did not submit the documentation required of the mandatory respondents, which is a statutory requirement for receiving voluntary respondent status under 19 U.S.C. § 1677m(a).

F. Supp. 2d 1358, 1363 (2011) ("[P]laintiffs do not qualify for a
remand order in this form, having withdrawn their request for
voluntary respondent status during the review and thereby failing
to exhaust their administrative remedies on the individual
examination issue."); Asahi Seiko Co. v. United States,  CIT

 , 755 F. Supp. 2d 1316, 1327 (2011) ("Asahi II") ("Ashai
withdrew from the review rather than taking steps available to it
for seeking its own rate, which involve seeking voluntary
respondent status under [19 U.S.C. § 1677m(a)].  The court
concludes, therefore, that Asahi failed to exhaust its
administrative remedies . . . ."); RHI Refractories Liaoning Co.
v. United States,  CIT  , 752 F. Supp. 2d 1377, 1380 (2011)
(holding that respondent lacked standing to intervene in
challenge to administrative review of antidumping duty order for
failure to exhaust administrative review after withdrawing its
request for voluntary respondent status); see also Asahi Seiko
Co. v. United States,  CIT  , 751 F. Supp. 2d 1335, 1341–42
(2010) ("Asahi I").

     These recent cases hold that withdrawing from an
administrative review rather than seeking voluntary respondent
status constitutes a failure to exhaust administrative remedies,
which bars a plaintiff's challenge to the respondent selection
process.  It is equally the case that a plaintiff, such as Fish
One, that goes forward with a review but does not request

voluntary respondent status, has also failed to exhaust its
administrative remedies.[29]  In both cases, plaintiffs have failed
to take advantage of a "prescribed administrative remedy."
McKart, 395 U.S. at 193; see also L.A. Tucker Truck Lines, 344
U.S. at 37 ("[C]ourts should not topple over administrative
decisions unless the administrative body not only has erred but
has erred *against objection made at the time appropriate under
its practice*." (emphasis added)).

Fish One's argument that its failure to exhaust the
administrative remedies was excused due to futility is
unavailing.  Fish One appears to argue that because it expected
to receive a revocation review upon request — according to its
interpretation of the statutes and regulations — it did not
timely submit the necessary information to be considered as a
mandatory respondent; therefore, it was futile for Fish One to
object to the mandatory respondent selection process because it
was time barred from becoming a mandatory respondent. Pl.'s Reply
to Def.'s & Def.-Intervenor's Resp. Br. 8-9, ECF No. 71 ("Pl.'s

_____

[29] Even where this Court has found the mandatory respondent
selection process flawed, it has denied relief to plaintiffs that
failed to exhaust their administrative remedies by not seeking
voluntary respondent status. See Asahi I,   CIT at  , 751 F.
Supp. 2d at 1340-42; Asahi II,   CIT at   , 755 F. Supp. 2d at
1325-27. In this case, however, the court declines to rule on
whether the Department's mandatory selection process was flawed.
The court finds no need to reach this issue as Plaintiff has not
shown that it exhausted its administrative remedies. See 28
U.S.C. § 2637(d) (2006); Consol. Bearings, 348 F.3d at 1003.

Reply Br."). However, because it was Fish One's own
interpretation of the law that rendered its objections untimely,
it has no recourse to a futility exception, as it was not
Commerce's decision, obstinance, or intractability, but rather
Fish One's own conduct, that made the effort futile.
Furthermore, there is no indication that Commerce would have
refused to acknowledge Fish One's objections had they been timely
lodged or lodged at all.  Though Fish One argues that "Commerce
would not have contravened its regulations and selected Fish One
as a mandatory respondent," Id. at 9, Fish One offers no
indication that this was, in fact, Commerce's position.  The bar
for a futility exception is high, requiring more than
unlikeliness. See Corus Staal BV v. United States, 502 F.3d 1370,
1379 (Fed. Cir. 2007) ("The mere fact that an adverse decision
may have been likely does not excuse a party from a statutory or
regulatory requirement that it exhaust administrative
remedies."); Schaeffler Italia,    CIT at   , 781 F. Supp. 2d at
1364–65 ("Plainly, the voluntary respondent request was unlikely
to have been approved had Schaeffler not withdrawn it, but
Commerce did not close the door entirely on the prospect that
Schaeffler Italia might be examined.").  Resting solely on its
conclusory allegation that Commerce would not have acted upon its
objections, Fish One has not shown that lodging the objection

Consol. Court No. 09-00431                              Page 36

would have been futile.[30]

Fish One failed to exhaust its administrative remedies by not raising objections to the mandatory respondent selection at the administrative level and by not seeking voluntary respondent status.  As such, the court will not reach the question of whether Fish One should have been individually reviewed as a mandatory respondent or the question of whether the mandatory respondent selection process was reasonable.

III. The zero percent dumping margin assigned to Fish One in the third administrative review does not guarantee revocation

Finally, Fish One argues that because it received a zero percent dumping margin in the third administrative review and has complied with all relevant statutory and regulatory obligations, "a strict interpretation of the statute and regulations warrants a finding that Commerce simply take the information placed by Fish One on the record, verify it, and issue its decision regarding revocation." Pl.'s Br. 20.  Insofar as this argument

_____

[30] Zhejiang is not to the contrary. In Zhejiang, the Court held that the plaintiffs could challenge the mandatory selection process despite not having completed the voluntary respondent process. Zhejiang,    CIT at    , 637 F. Supp. 2d at 1265.  On the facts of that case, the Court found that it would have been futile for the plaintiffs to continue seeking voluntary respondent status because "Commerce had informed Zhejiang's counsel that Commerce would not accept Zhejiang as either a mandatory or voluntary respondent." Id.  At no point in the administrative review at issue here did Commerce indicate that it would not accept voluntary respondents, or more to the point, that it would not accept Fish One as a voluntary respondent. See Corus Staal, 502 F.3d at 1379.

reiterates Fish One's prior assertion that either the statute or
regulations should be read to require Commerce to review and
revoke the order as it pertains to Fish One, these arguments have
been discussed above.  Fish One's further argument that, having
received a *de minimis* rate for three consecutive years, it is now
entitled to revocation is contrary to the plain language of both
the statute and regulations.  As has been discussed, both the
statute and regulations clearly make the grant of revocation
discretionary.

The argument advanced by Fish One is very similar to one
dismissed by this Court in Hyundai.  In that case, the plaintiff
"maintain[ed] that except in extraordinary cases, Commerce should
automatically revoke an AD order when respondent can show three
years of no dumping and has furnished the required no-dumping
agreements." Hyundai, 23 CIT at 307-08, 53 F. Supp. 2d
at 1339-40.  The Court found that such an argument lacked merit
because both the statute and regulations made revocation a
discretionary decision by Commerce. Id. at 308, 1340.  Though the
regulatory language has changed since Hyundai, see supra note 13,
the court finds that the reasoning behind Hyundai continues to be
valid.  As discussed above, Commerce has reasonably interpreted
the statutes and regulations related to revocation.  Together the
statutes and regulations create a process for determining whether
Commerce should exercise its statutory discretion to revoke an

order.  According to Commerce's reasonable interpretation, this process requires an individual review of a respondent, which did not occur in this case.  There is nothing in the statutory or regulatory language that compels Commerce to make a revocation determination other than through this process.  As in Hyundai, Commerce has the discretion to revoke orders, and so long as it acts reasonably in construing and enforcing the statutory and regulatory provisions, the Court will not upset its decision. Thus, Fish One's assertion that three consecutive years of *de minimis* dumping margins and compliance with statutory and regulatory requirements should guarantee revocation is without merit.

## CONCLUSION

Consistent with the court's Order dated Aug. 9, 2011, the issue concerning calculation of separate rates for cooperative non-individually investigated respondents is voluntarily REMANDED for reconsideration in light of the Court's decision in Amanda Foods (Vietnam) Ltd. v. United States,     CIT    , 774 F. Supp. 2d 1286 (2011).

For all the foregoing reasons, the remainder of the Department's Final Results, 74 Fed. Reg. 47,191, are AFFIRMED.

Commerce shall have until February 13, 2012, to complete and file its remand redetermination.  Plaintiff shall have until February 27, 2012, to file comments.  Defendant and

Defendant-Intervenors shall have until March 12, 2012, to file

any reply.

      It is **SO ORDERED**.


                                             /s/ Donald C. Pogue
                                   Donald C. Pogue, Chief Judge

Dated: December 14, 2011
     New York, New York